# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39885

STATE OF IDAHO,              )
                                         )
      Plaintiff-Respondent,    )
                                         )
v.                                )
                                       )
GEIRROD DETLOPH STARK,   )
                                       )
      Defendant-Appellant.    )
                                       )

2013 Opinion No. 20

Filed: April 4, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge; Hon. L. Kevin Swain, Magistrate.

Appellate decision by district court affirming magistrate's judgment of conviction for DUI, <u>reversed</u>.

Dominick Law Offices, PLLC, Boise, for appellant. Bobbi K. Dominick argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

WALTERS, Judge Pro Tem

Geirrod Detloph Stark was convicted of driving under the influence of a drug or intoxicating substance. Stark appeals, and asserts that the State did not present sufficient evidence to prove his guilt beyond a reasonable doubt.

## I.

## BACKGROUND

A law enforcement officer observed Stark make an illegal right-hand turn, briefly drive the wrong way on a one-way street, and then pull into a gas station parking lot, at which point the officer initiated a traffic stop. When the officer approached Stark's vehicle, Stark cursed at the officer and told him to "quit harassing him." Stark's speech was slurred, he kept his head down, and he refused to look at the officer even when requested to do so. The officer ordered Stark out of the vehicle and to sit on the curb. The officer observed that Stark "shrunk over" as

1

he sat on the curb, that his head drooped and bobbed as the officer attempted to question him, that his pupils were "pinpointed," and that he appeared to be having difficulty keeping his eyes open, as if he were falling asleep. The officer proceeded to conduct three field sobriety tests including a horizontal gaze nystagmus test, a walk-and-turn test, and a one-legged balance test. The officer observed nystagmus in Stark's eyes and Stark performed poorly on the other tests.

Stark was arrested and taken into custody, where he submitted to a breath-alcohol test. The breath test did not detect any alcohol in Stark's breath. A second officer who was trained as a "drug recognition expert" attempted to interview Stark in an effort to determine whether Stark was under the influence of drugs, but discontinued his attempts when Stark told him to "f--k off." Stark did, however, submit to a blood draw. A subsequent toxicology examination indicated the presence of Carboxy-THC in Stark's blood.

Stark was charged with driving under the influence of drugs or an intoxicating substance, Idaho Code section 18-8004(a)(1), and tried before a magistrate judge. At trial, the evidence presented by the State consisted exclusively of the testimony from the arresting officer, an audio recording of the stop, and the toxicology report, which was admitted by stipulation. Testifying in his own defense, Stark admitted that he occasionally used marijuana but testified that he was not under the influence of marijuana or other drugs when he was stopped by the officer. He testified that he had difficulty with the field sobriety tests because he was dehydrated, hot, hungry, and agitated as a result of the traffic stop. Stark also testified that he suffered from various physical and mental conditions including a brain aneurysm, paranoid schizophrenia, and bipolar disorder, for which he was receiving full disability benefits from the military. He testified that five days before his arrest, he had been released from an eight-week hospital stay, and that following his arrest, he was involuntarily committed to a psychiatric hospital where he was held until trial, more than three months later.

After the parties presented their closing arguments, the magistrate stated:

[T]here is virtually no question in my mind that Mr. Stark was impaired, that he was under the influence of something. And the question becomes then, what?
And my view of the evidence in this case is that although certainly there is a question, I'm satisfied that the State has proven beyond a reasonable doubt that the impairment was due to the ingestion of drugs.

Stark was convicted of driving under the influence of a drug or intoxicating substance. In an appeal to the district court, Stark asserted that evidence presented at trial was insufficient to

2

support the verdict. The district court affirmed. Stark now appeals from the decision of the district court.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). When a criminal action has been tried to a court sitting without a jury, appellate review of the sufficiency of the evidence is limited to ascertaining whether there is substantial evidence upon which the court could have found that the prosecution met its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Bettwieser*, 143 Idaho 582, 588, 149 P.3d 857, 863 (Ct. App. 2006); *State v. Smith*, 139 Idaho 295, 298, 77 P.3d 984, 987 (Ct. App. 2003). We are precluded from substituting our judgment for that of the fact finder as to the credibility of witnesses, the weight of evidence, and the reasonable inferences to be drawn from the evidence. *State v. Vandenacre*, 131 Idaho 507, 510, 960 P.2d 190, 193 (Ct. App. 1998); *State v. Hickman*, 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct. App. 1991).

Stark was convicted of driving under the influence of drugs or intoxicating substances under Idaho Code section 18-8004(1)(a). That section provides:

> It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances . . . to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

A person is "under the influence," for purposes of section 18-8004, if the person's ability to drive is impaired in some identifiable way by alcohol, drugs, intoxicating substances, or some combination thereof. *State v. Robinett*, 141 Idaho 110, 113, 106 P.3d 436, 439 (2005); *State v. Schmoll*, 144 Idaho 800, 804, 172 P.3d 555, 559 (Ct. App. 2007); *State v. Andrus*, 118 Idaho 711, 714-15, 800 P.2d 107, 110-11 (Ct. App. 1990). The State may prove that a person is under

3

the influence of alcohol, drugs, or an intoxicating substance by a totality of the evidence.[1] *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 203, 280 P.3d 703, 706 (2012); *Robinett*, 141 Idaho at 112, 106 P.3d at 438; *State v. Barker*, 123 Idaho 162, 163, 845 P.2d 580, 581 (Ct. App. 1992). "A totality of the evidence has been defined to encompass 'circumstantial evidence of impaired driving ability or other observable symptoms of intoxication.'" *Barker*, 123 Idaho at 163, 845 P.2d at 581 (quoting *State v. Knoll*, 110 Idaho 678, 682, 718 P.2d 589, 593 (Ct. App. 1986)). *See also Robinett*, 141 Idaho at 112, 106 P.3d at 438. However, to prove that a person is guilty of driving under the influence, the State must prove more than a driving impairment. The State must also present evidence, besides the impairment itself, to prove that the impairment was *caused* by alcohol, drugs, or intoxicating substances. *See* I.C. § 18-8004(a)(1). In other words, proving an impairment does not prove the cause of the impairment.[2] *See State v. Borrelli*, 895 A.2d 257, 263 (Conn. App. Ct. 2006) (discussing whether evidence was sufficient "to show that the defendant was impaired and that her impairment was caused by a drug or drugs"); *State v. Bitz*, 757 N.W.2d 565, 566-67 (N.D. 2008) (no question as to impairment, only question is whether drugs detected in urine caused impairment); *Delane v. State*, 369 S.W.3d 412, 430 (Tex. App. 2012) ("The term 'intoxicated' therefore has two components: (1) impairment (2) caused by alcohol or drugs."). This is especially true when the finder of fact is presented with evidence suggesting that an impairment could have been caused either by an intoxicating substance or by a medical condition.

Lay testimony regarding observations of a person's behavior and actions, including the person's poor performance on field sobriety tests, can, of course, be used to prove impairment, one of the necessary elements of proving a charge of driving under the influence using the totality of the evidence method of proof. *See State v. Garrett*, 119 Idaho 878, 881, 811 P.2d 488, 491 (1991). In this case, there is no question that Stark's driving ability was impaired. The officer testified that he observed Stark drive the wrong way on a one-way street. After Stark was stopped, he exhibited unusual behavior including belligerence, drowsiness, and slurred speech.

---

[1]     The State may also use test results showing an alcohol concentration of 0.08 or more to establish a per se violation of the prohibition against driving under the influence of alcohol. *See* I.C. § 18-8004; *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 280 P.3d 703, 706 (2012).

[2]     We do not imply, however, that direct evidence, as opposed to circumstantial evidence, is required.

The officer testified that Stark appeared to have difficulty keeping his eyes open and remaining awake, and that Stark's head drooped and bobbed as if he lacked control of his neck muscles. Stark performed poorly on both the walk and turn and the one-legged stand test.[3] During the walk and turn test, he was unable to keep his balance as the officer provided instructions, he started the test too early, he stepped off the line, he raised his arms to keep his balance, he forgot to count out loud, he took the wrong number of steps, and he stopped the test too early. During the one-legged stand test, he was unable to keep his balance as the officer provided instructions, he swayed, he put his foot down during the test, and he hopped.

Although this evidence was sufficient to prove that Stark's ability to drive was impaired, it was not sufficient, by itself, to prove that Stark was under the influence of drugs or intoxicating substances. Some additional evidence was required to prove that Stark's impairment was caused by drugs or intoxicating substances. The other evidence presented at trial included: (1) the results of the toxicology examination indicating the presence of Carboxy-THC in Stark's blood; (2) Stark's testimony that he had been medicated with a "cocktail" of drugs five days earlier during a hospital stay; (3) the officer's testimony that Stark "looked like someone [who] had been under the effects of a narcotic" and that he was "concerned that [Stark] was unsafe to drive and under the influence of some kind of drug"; and (4) the officer's testimony regarding Stark's refusal to participate in a post-arrest interview as part of a drug recognition evaluation.[4] The State asserts that this evidence is sufficient to show that Stark was under the influence of marijuana or some other drug or intoxicating substance that the toxicology test was incapable of detecting. We disagree.

---

[3]    The officer also testified that Stark exhibited horizontal gaze nystagmus. Horizontal gaze nystagmus, which is an involuntary jerking of the eyes as the eyes are turned from side to side, "is an indication that the subject may be under the influence of alcohol." *State v. Garrett*, 119 Idaho 878, 881, 811 P.2d 488, 491 (1991). However, Stark was not charged with driving under the influence of alcohol and the State presented no evidence that the horizontal gaze nystagmus test is indicative of impairment due to other intoxicating drugs or substances. Absent such evidence, the officer's observations of horizontal gaze nystagmus are irrelevant.

[4]    The State also asserts that a torn plastic baggie discovered during a search of Stark's person was circumstantial evidence that Stark was under the influence of drugs. The baggie was empty and was apparently not tested for drugs. Given the lack of any indication in this case that the baggie was actually used as drug packaging, the evidence does not merit further discussion.

The magistrate, acting as the finder of fact, implicitly found that the State had not proved that Stark was under the influence of marijuana. The magistrate specifically commented on the toxicology report and the horizontal nystagmus test, stating that the toxicology report only demonstrated past marijuana use, and that the State had presented no evidence that nystagmus is an indicator of marijuana intoxication. In rendering a verdict, the magistrate determined that the State had not proved that Stark drove under the influence of any particular drug or intoxicating substance, necessarily including marijuana. Pursuant to our standards of review, this Court will not second guess the magistrate's factual determination that the State failed to prove its case on a specific factual theory.

Furthermore, we conclude that the evidence was legally insufficient to prove Stark was under the influence of marijuana. The State concedes that the chemical substance Carboxy-THC, as opposed to THC, is not a drug or intoxicating substance but is, instead, a metabolite of marijuana. *Compare Reisenauer v. State, Dep't of Transp.*, 145 Idaho 948, 950-51, 188 P.3d 890, 892-93 (2008) ("Carboxy-THC is not in and of itself a drug. . . . It is only a metabolite of a drug."), *with State v. Doe*, 149 Idaho 353, 355 n.1, 233 P.3d 1275, 1277 n.1 (2010) ("THC is an abbreviation for tetrahydrocannabinol, the active compound in marijuana."). A blood test indicating the presence of Carboxy-THC shows nothing more than past marijuana use. *See Reisenauer*, 145 Idaho at 950-51, 188 P.3d at 892-93. Evidence of past drug use is relevant to a charge of driving under the influence of that drug only if the State proves a connection between the past drug use and a driver's impairment at the time the motor vehicle was operated. *See Robinett*, 141 Idaho at 112-13, 106 P.3d at 438-39.

Because the toxicology report indicated the presence of Carboxy-THC, but not THC, it was, in essence, a negative drug test. The State did not present sufficient evidence to demonstrate marijuana intoxication at the time Stark was driving. The State presented no testimony or other evidence that could explain the absence of THC in the toxicology report or to explain if, or how, the results of the toxicology report could be extrapolated back to show intoxication at a specific time.[5] The State presented no evidence indicating how quickly

_____

[5]    *Cf. Reisenauer*, 145 Idaho at 952-53, 188 P.3d at 894-95 (J. Jones, J., concurring) ("Where, as here, Carboxy-THC is a derivative or metabolite of an intoxicating drug, test results indicating the presence of the derivative or metabolite, when supplemented by testimony extrapolated back to the time of the alleged offense to show that the intoxicating precursor was

6

marijuana metabolites such as Carboxy-THC can be detected in a person's blood after ingesting marijuana, or how long they can be detected after the intoxicating effects of marijuana have dissipated. The State presented no evidence suggesting that Stark's behavior was consistent with the symptoms of marijuana use. Although the State proved that Stark was impaired, and that he had used marijuana at some point in the past, the evidence presented by the State was insufficient to prove that Stark's impairment was caused by Stark's past marijuana use.

The State asserts that Stark's impairment could have been caused by drugs or intoxicating substances that were not detected in the toxicology report. However, the State did not produce sufficient evidence to support such a finding. The only evidence of previous drug use, other than marijuana, was Stark's own testimony that he had been given a "cocktail" of medications during a hospital stay five days before his arrest. The State presented no evidence that the medications Stark had taken at the hospital were intoxicating or that their intoxicating effect could have lasted five days. Furthermore, the State made no attempt to explain why, if Stark was still under the intoxicating effect of medications he took five days earlier, the medications were not detected in the toxicology examination. While it may be possible, through the use of expert testimony, to demonstrate that a person is under the influence of an unknown drug or intoxicating substance that does not appear on a toxicology report, the State did not present such testimony in this case. We again emphasize that the toxicology report did not reveal the presence of an intoxicating drug or substance, which, together with evidence of Stark's impairment, would almost certainly have been sufficient to prove a violation of section 18-8004 under the totality of the evidence method of proof. Absent additional evidence explaining the results of the report, the report did not support a finding that Stark was guilty of driving under the influence of a drug or intoxicating substance.

_____

then present in the person's system, would satisfy the test element of [the administrative license suspension statute, I.C. § 18-8002A(4)(a)]. . . . There was no such evidence in this case. The evidence showed that with the passage of time marijuana degrades to its metabolite, Carboxy–THC, but there was no evidence presented to the hearing officer to show that this change took place after the alleged offense, rather than beforehand. If there had been competent evidence in this case to show that the intoxicating form of the drug was in Reisenauer's system at the time of the alleged offense, a suspension of his license would have been warranted.").

We next consider the officer's testimony that Stark "looked like someone [who] had been under the effects of a narcotic" and that he was "concerned that [Stark] was unsafe to drive and under the influence of some kind of drug." Neither of these statements constitutes an opinion that Stark was under the influence of drugs or intoxicating substances. Instead, the officer was describing why he detained Stark, asked him to perform field sobriety tests, and placed him under arrest. Absent any testimony that constitutes an opinion, the officer's testimony is not evidence that Stark was under the influence of drugs or intoxicating substances.

Finally, the State asserts that Stark refused to participate in an interview as part of a drug recognition evaluation (DRE), and that his refusal demonstrates consciousness of guilt. The officer testified that a second officer "started the interview process and [Stark] said to 'f--k off,'" so the second officer discontinued his efforts to interview Stark. It is well established that a person has a right not to answer questions during a custodial interrogation. *E.g.*, *Miranda v. Arizona*, 384 U.S. 436 (1966). The exercise of that right does not constitute evidence of guilt. In this case, the State has presented no argument or authority to suggest that questioning that occurs as part of a DRE is anything other than custodial interrogation, and no additional information regarding the DRE and questioning is available in the record. Thus, for purposes of this case, we will not consider Stark's refusal to answer questions during the DRE as evidence of consciousness of guilt. We also note that Stark submitted to a blood draw after the officers attempted to perform a DRE, thus permitting the State to collect what is, perhaps, "the most reliable and accurate evidence" of intoxication that the State could have obtained. *State v. Tate*, 122 Idaho 366, 369, 834 P.2d 883, 886 (Ct. App. 1992). Therefore, even if the DRE was not considered custodial interrogation and a person's refusal to participate could be considered consciousness of guilt, Stark's refusal would be accorded little or no weight in this case.

## III.

## CONCLUSION

The evidence presented at trial was insufficient to demonstrate that Stark drove a motor vehicle while under the influence of drugs or intoxicating substances. Therefore, we reverse the district court's order on intermediate appeal affirming Stark's conviction. Stark's judgment of conviction must be vacated.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**

8