**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44852**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2018 Unpublished Opinion No. 320 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed:  January 12, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| ERIC SCOTT SPOKAS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Patrick H. Owen, District Judge.

Order revoking probation, executing sentence, and retaining jurisdiction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Eric Scott Spokas appeals from the district court's order revoking his probation, executing his sentence, and retaining jurisdiction.  He contends the district court's finding that he violated probation is not supported by substantial evidence.  For the reasons explained below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After Spokas was convicted of aggravated assault on January 20, 2016, the court placed him on supervised probation for a period of four years.  The next day, Spokas signed an Idaho Department of Correction (IDOC) Agreement of Supervision (probation agreement).  Spokas's probation agreement includes a provision stating that Spokas will "report as directed by my

1

probation/parole officer." It contains another provision stating that Spokas will not use controlled substances other than those that are lawfully prescribed.

On May 12, 2016, the State filed a motion for probation violation, which alleged, inter alia, that Spokas used marijuana on or about March 3, 2016. On October 18, 2016, pursuant to Spokas admitting to committing three of the non-drug-related violations, the district court revoked Spokas's probation. However, it suspended the execution of sentence and reinstated probation upon the same terms and conditions as before.

On November 15, 2016, the State filed a motion for probation violation, alleging seven violations, including marijuana use and failure to report. Spokas denied all of the allegations. An evidentiary hearing was held. At the hearing, a probation officer, who was not Spokas's supervising officer, testified that he administered a urinalysis drug test, which came back presumptively positive for THC, on October 21, 2016. The district court found that the urinalysis, despite being an unconfirmed presumptive test, was sufficiently reliable to establish that Spokas had used marijuana on or about October 21, 2016. The district court also found that the testing officer had told Spokas to make immediate contact with his supervising officer regarding the positive drug test and that Spokas had failed to do so. The district court, after the conclusion of the evidentiary hearing, found that Spokas had violated his probation by using marijuana on or about October 21, 2016, and by failing to report to his supervising officer as instructed by the testing officer. The district court then revoked Spokas's probation, executed his sentence, and retained jurisdiction.[1] Spokas timely appealed from the district court's order.

## II.

## ANALYSIS

In reviewing a probation revocation proceeding, we employ a two-step analysis. *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003). First, we ask whether the defendant violated the terms of probation. *Id.* If it is determined that the defendant has in fact

---

[1] The Idaho Department of Correction Offender Search reflects that Spokas was released to supervision on September 1, 2017. Due to the likelihood that the issues presented in this case will arise in future probation revocation proceedings, we address this case on the merits. *See Mallery v. Lewis*, 106 Idaho 227, 234, 678 P.2d 19, 26 (1983) (holding that absent the "capable of repetition, yet evading review" exception to the mootness doctrine, pretrial detainees would not be afforded appellate review because detention for pretrial detainees averaged six to eight months).

violated the terms of probation, the second question is what should be the consequences of that violation. *Id.*

For the first step, a district court's finding of a probation violation will be upheld on appeal if there is substantial evidence in the record to support the finding. *State v. Lafferty*, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct. App. 1994). In the event of conflicting evidence, we will defer to the district court's determinations regarding the credibility of witnesses. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070. As to the second step, the decision whether to revoke a defendant's probation for a violation is within the discretion of the district court. *Lafferty*, 125 Idaho at 381, 870 P.2d at 1340; *see* Idaho Code § 20-222. Thus, we review a district court's decision to revoke probation under an abuse of discretion standard. *Lafferty*, 125 Idaho at 381, 870 P.2d at 1340. When a district court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070.

## A. Unlawful Use of a Controlled Substance

Spokas argues that the urinalysis that the district court relied on in finding that Spokas had used marijuana on or about October 21, 2016--in violation of the tenth term of his probation agreement--cannot constitute substantial evidence, as it was merely an unconfirmed presumptive test based on marijuana metabolites. The State contends that Spokas did not present this argument below, but the record shows that Spokas's trial counsel challenged whether an unconfirmed urinalysis could be used as proof of recent marijuana use. We will first address Spokas's argument that because the urinalysis only tests for marijuana metabolites, the results cannot constitute substantial evidence of marijuana use. Then we will discuss whether a confirmatory test is necessary before the test results can constitute substantial evidence of marijuana use.

In *State v. Stark*, 157 Idaho 29, 32-33, 333 P.3d 844, 847-48 (Ct. App. 2013), this Court noted that a positive test for Carboxy-THC, a metabolite of marijuana, is only proof that the subject used marijuana at some point in the past. The fact that Carboxy-THC is only a metabolite of marijuana was important in *Stark* because the defendant was charged with driving under the influence, meaning that evidence of past drug use is only relevant if the State proves a

connection between the past drug use and the driver's impairment at the time the vehicle was being operated. *Id.* Unlike in *Stark*, the timing of the marijuana usage is not as important in the present case. Spokas was bound by the terms of the probation agreement since he signed it on January 21, 2016. Furthermore, the district court's findings used "on or about" language, thus contemplating that the drug use may have occurred prior to the day of testing. Finally, Spokas's own scientific source sets a seventy-seven-day cutoff for positive test of marijuana metabolites, meaning the positive test from October could not have been caused by the alleged marijuana use in March. *See* Ellis Jr., GM, Mann MA, et al., *Excretion Patterns of Cannabinoid Metabolites After Last Use in a Group of Chronic Users*, CLINICAL PHARMACOLOGY AND THERAPEUTICS, Nov. 1985, pp. 572-78, *available at* https://www.ncbi.nlm.nih.gov/pubmed/3902318 (last visited December 26, 2017) ("We demonstrated that under very strictly supervised abstinence, chronic users can have positive results for cannabinoids in urine at 20 ng/ml or above on the EMIT-d.a.u. assay for as many as 46 consecutive days from admission, and can take as many as 77 days to drop below the cutoff calibrator for 10 consecutive days. For all subjects, the mean excretion time was 27 days."). Assuming the urinalysis is reliable, it constitutes substantial evidence that Spokas used marijuana at some point after the marijuana use incident on March 3, 2016.

However, Spokas challenges the reliability of the urinalysis, asserting that it cannot constitute substantial evidence absent a confirmatory test. In his brief, Spokas directs this Court's attention to *State v. Farmer*, 131 Idaho 803, 964 P.2d 670 (Ct. App. 1998). In *Farmer*, the defendant was challenging the admissibility of a urinalysis at a probation revocation hearing, claiming that the test was unreliable. *Id.* at 805, 964 P.2d at 672. Unlike Farmer, who had objected to admission of the test results for lack of foundation at the revocation hearing, Spokas did not object to the admission of the urinalysis results. *Id.*

The crux of Farmer's argument was that without testimony as to the qualifications of the person performing the test and the procedures used in administering the test, the results were unreliable. In the present case, the testing officer testified as to the test procedure, specifically that the testing cup was sealed, that the defendant then provided a sample after breaking the seal, and that the defendant then sealed the sample with a lid once he was finished. In *Farmer*, this Court also noted that the reliability of a urinalysis is enhanced by a confirmatory test, but that observation did not make confirmatory tests a *sine qua non* for admitting the results of a urinalysis. *Id.* at 806, 964 P.2d at 673. In fact, this Court observed that Farmer presented no

evidence contesting the accuracy of the reports and also that Farmer did not seek to have an independent retest performed on the urine sample. *Id.* In the present case, the testing officer admitted the possibility of false positives, but also testified that the test was "generally reliable" based on his experience providing thousands of tests. The State need only prove probation violations by a preponderance of the evidence. *See State v. Edelblute*, 91 Idaho 469, 480, 424 P.2d 739, 750 (1967) (holding that proof of probation violation beyond a reasonable doubt is not required). A "generally reliable" scientific test conducted in a manner likely to avoid contamination constitutes substantial evidence; therefore, the district court did not err in finding Spokas violated this term of his probation.

## B.     Failure to Immediately Contact Supervising Officer

The district court found that Spokas had violated a condition of his probation by failing to immediately contact his supervising officer after being instructed to do so by the officer who administered the urinalysis on October 21, 2016. Spokas makes three arguments in regard to this finding. First, Spokas contends that the testing officer never "instructed" Spokas to contact his supervising officer, but merely "suggested" that Spokas make contact. Second, Spokas argues that he was never told to "immediately" report to his supervising officer. Finally, Spokas asserts that his probation agreement only requires him to report as directed by his supervising officer, not as directed by other IDOC agents.

Spokas's first argument fails because, despite the testing officer using the word "suggested" in his notes, the testing officer testified that he "instructed" Spokas to contact his supervising officer. Spokas's second argument fails because although he was not instructed to "immediately" report to his supervising officer, Spokas was nevertheless instructed to contact his supervising officer to discuss the test results and failed to do so. This would make the word "immediately" superfluous language in the motion for probation violation, but would not negate a finding that he failed to report as instructed.

Turning to Spokas's third argument, the record reflects that Spokas was not instructed to report by his supervising officer, meaning that the failure to report did not violate any terms of probation. Spokas's probation agreement uses the phrase "my probation/parole officer" when discussing Spokas's duty to report as directed. Because the testing officer was not Spokas's supervising officer, Spokas argues he was not required to follow the testing officer's order to report to the supervising officer. This interpretation of the second term of Spokas's probation

5

agreement is strengthened by the language used in the eleventh term, which states that the probationer shall submit to substance abuse testing as directed by "any IDOC agent or other law enforcement officer." The drafters of the probation agreement distinguished between "my probation/parole officer" and "any IDOC agent," so we must interpret "my probation/parole officer" to mean Spokas's supervising officer. Moreover, no other term of the probation agreement expressly addresses a requirement to obey instructions or directions to report given by individuals other than Spokas's supervising officer.

Because Spokas was instructed to report by the testing officer, rather than his supervising officer, Spokas's failure to comply with that instruction cannot constitute a probation violation under the language of the probation agreement as it is currently written. Accordingly, the district court's finding that Spokas violated his probation agreement by failing to immediately contact his supervising officer on October 21, 2016, was not supported by substantial evidence in the record.

## C.    Remand Unnecessary

In his opening brief, Spokas argues that if this Court holds that only one of the district court's findings is supported by substantial evidence, this case must be remanded for a new disposition hearing. Spokas argues, without citing to any authority, that this outcome is required because this Court cannot speculate as to whether the district could would have revoked his probation and executed his sentence based on only a minor violation. While that argument was successful in *State v. Blake*, 133 Idaho 237, 243, 985 P.2d 117, 123 (1999), it is not persuasive in this case, as the marijuana use violation was the more serious violation. In *Blake*, the appellant appealed from his conviction on two drug charges, as well as from the the district court's order revoking probation, as the order was based on the new criminal convictions as well as the appellant's failure to attend a meeting with his probation officer. The Idaho Supreme Court vacated the new convictions, leaving the failure to attend a single meeting as the sole basis of the probation revocation. In that context, the Supreme Court remanded the probation revocation to the district court. But the Supreme Court has previously explained that if it is unconvinced that the district court would exercise its discretion to revoke an appellant's probation differently, remand is unnecessary. *See State v. Mummert*, 98 Idaho 452, 455, 566 P.2d 1110, 1113 (1977); *see also State v. Upton*, 127 Idaho 274, 276, 899 P.2d 984, 986 (Ct. App. 1995) (holding that "remand is not necessary if it is clear from the record that the district court would have revoked

probation based solely upon the other violations"). We believe that the marijuana use violation in this case is sufficiently serious to render remand unnecessary.

## III.

## CONCLUSION

We hold that there is substantial evidence in the record to support the district court's finding that Spokas violated his probation by using marijuana on or about October 21, 2016. Due to the fact that the marijuana use is the more serious probation violation--and also the basis for the failure to report allegation--we are confident that the district court would have revoked probation on that basis alone. Accordingly, the district court's order revoking Spokas's probation, executing Spokas's sentence, and retaining jurisdiction is affirmed.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.