IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 51864

STATE OF IDAHO, )
            ) Filed:  February 18, 2026
        Plaintiff-Respondent, )
            ) Melanie Gagnepain, Clerk
v. )
            ) THIS IS AN UNPUBLISHED
GABRIEL KENNETH KEEFE, ) OPINION AND SHALL NOT
            ) BE CITED AS AUTHORITY
        Defendant-Appellant. )
            )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Peter G. Barton, District Judge.

Judgment of conviction for driving under the influence, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Gabriel Kenneth Keefe appeals from his judgment of conviction for driving under the influence (DUI).[1]  Keefe argues the district court erred in denying his motion for judgment of acquittal because the State did not present sufficient evidence to prove Keefe's impairment was caused by drugs or an intoxicating substance.  For the reasons stated below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 1:30 a.m., while on patrol near a grocery store parking lot, officers observed an individual, later identified as Keefe, slumped over in the driver's seat of a parked vehicle with the key in the ignition and the engine running.  In the back seat of the vehicle, the officers saw another

---

[1]     Keefe was also convicted of trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(A) and possession of drug paraphernalia, I.C. § 37-2734(A).  Those convictions are not at issue on appeal.

individual, later identified as Keefe's wife. The officers contacted Keefe who then explained that he and his wife lived in their vehicle and were sleeping until his wife's shift at work began.

Officer Merz, a certified drug recognition expert (DRE), observed a "torch-style lighter" in plain view on the center console next to Keefe and Officer Merz recognized it, based on his training and experience, as the type of lighter commonly used to melt and smoke narcotics. Officer Merz also noted that Keefe's eyelids were retracted and displayed rapid tremors, and his eyes were bloodshot and watery. Officer Merz asked Keefe to stick his tongue out and when he did, it pulsated rapidly. Officer Merz suspected Keefe was under the influence of a controlled substance and asked Keefe when he had last used any stimulants. Keefe indicated he used methamphetamine the week before.

Officer Merz asked Keefe to step out of the vehicle to conduct a DUI investigation. Keefe then stated he was a recreational user of methamphetamine. Officer Merz took Keefe's pulse, which was elevated at 136 beats per minute.[2] During the horizontal gaze nystagmus examination, Keefe was unable to keep his head still despite instructions to do so. Officer Merz then instructed Keefe to perform a series of field sobriety tests (FSTs); Keefe performed poorly. At the end of the FSTs, Officer Merz again took Keefe's pulse which measured at 122 beats per minute.

During the DUI investigation, a canine unit officer arrived at the scene with a drug dog. Keefe's wife consented to a free-air sniff of their vehicle. After the drug dog gave its final alert, the officers searched the vehicle and found over 140 grams of methamphetamine and various drug paraphernalia including a pink bong, a pipe used to smoke methamphetamine, a spoon, razor blades, and surgical tubing. Keefe was arrested for DUI, Idaho Code § 18-8004, and taken into custody for a blood draw.

Prior to trial, the State sought to admit Keefe's statements that he was a recreational methamphetamine user and had used methamphetamine the week before. The State filed a notice indicating it sought to introduce the statements at trial. Keefe objected. At a hearing on the State's motion, the district court ruled that the statements were not relevant, and even if relevant, were more prejudicial than probative, and thus, were not admissible pursuant to Idaho Rule of Evidence 403. The State filed a motion to reconsider. The district court denied the motion, and

---

[2]     Officer Merz opined that the normal pulse range is 60-90 beats per minute.

2

at trial, instructed the jury that Keefe's admission to methamphetamine use could not be considered as evidence for the DUI.

The State also sought to introduce evidence that Keefe had methamphetamine in his system at the time of the stop, including the amount of methamphetamine present in his blood, and that the amount present was above the therapeutic level. The State's proffered witness for this testimony was Celena Shrum, a toxicologist from the Idaho State Police Forensic Laboratory. Keefe objected, arguing that this evidence, like the evidence of his prior use, was not relevant and was substantially more prejudicial than probative. The district court ruled the blood test results that showed the presence and numerical amounts of methamphetamine in Keefe's blood could not be considered as evidence for the DUI. However, the district court ruled Officer Merz could testify as an expert that the amount of methamphetamine present in Keefe's blood was above the therapeutic level as to the trafficking and paraphernalia counts.

At trial, Officer Merz testified extensively about Keefe's physical symptoms of impairment, the methamphetamine and paraphernalia found in Keefe's vehicle, and that the amount of methamphetamine in Keefe's blood was above the therapeutic level. After the State rested, Keefe moved for an Idaho Criminal Rule 29 motion for judgment of acquittal which the district court denied. Keefe was found guilty as charged. Keefe appeals.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 29 provides that when a verdict of guilty is returned, the trial court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the trial court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given

to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

## III.
## ANALYSIS

On appeal, Keefe argues the district court erred when it denied his I.C.R. 29 motion for judgment of acquittal because, although the State presented sufficient evidence of Keefe's impairment, it did not present sufficient evidence to prove the cause of his impairment. More specifically, Keefe argues that if this Court does not consider the evidence regarding the amount of methamphetamine in Keefe's blood, the remaining evidence was insufficient to establish the causation of Keefe's impairment. Keefe requests this Court vacate his judgment of conviction and remand the case for a judgment of acquittal on the DUI charge.

The State argues the district court did not err in considering the evidence of methamphetamine in Keefe's blood but, regardless, the testimony of Officer Merz regarding Keefe's physical symptoms combined with the evidence of methamphetamine and paraphernalia was sufficient to prove Keefe was under the influence of methamphetamine. The State requests that if this Court grants Keefe a new trial on the DUI charge, we reverse the district court's ruling excluding the evidence of Keefe's blood test that showed the presence of methamphetamine because the test results were "plainly relevant, not speculative, and carried no potential for unfair prejudice or confusion."

Keefe was convicted of operating a motor vehicle while under the influence of drugs or an intoxicating substance under I.C. § 18-8004(1)(a). That section provides:

> It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances . . . to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

A person is "under the influence" for purposes of I.C. § 18-8004 if the person's ability to drive is impaired in some identifiable way by alcohol, drugs, an intoxicating substance, or some combination thereof. *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005); *State v. Schmoll*, 144 Idaho 800, 804, 172 P.3d 555, 559 (Ct. App. 2007); *State v. Andrus*, 118 Idaho 711, 714-15, 800 P.2d 107, 110-11 (Ct. App. 1990). The State may prove that a person is under the

4

influence of alcohol, drugs, or an intoxicating substance by a totality of the evidence. *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 203, 280 P.3d 703, 706 (2012); *Robinett*, 141 Idaho at 112, 106 P.3d at 438; *State v. Barker*, 123 Idaho 162, 163, 845 P.2d 580, 581 (Ct. App. 1992). "A totality of the evidence has been defined to encompass 'circumstantial evidence of impaired driving ability or other observable symptoms of intoxication.'" *Barker*, 123 Idaho at 163, 845 P.2d at 581 (quoting *State v. Knoll*, 110 Idaho 678, 682, 718 P.2d 589, 593 (Ct. App. 1986)); *see also Robinett*, 141 Idaho at 112, 106 P.3d at 438.

To prove a person is guilty of DUI, the State must prove more than a driving impairment. In addition to impairment, the State must present evidence to prove that the impairment was caused by alcohol, drugs, or an intoxicating substance. *See* I.C. § 18-8004(1)(a). In other words, proving an impairment does not prove the cause of the impairment. *See State v. Borrelli*, 895 A.2d 257, 263 (Conn. App. Ct. 2006) (discussing whether evidence was sufficient "to show that the defendant was impaired and that her impairment was caused by a drug or drugs"); *State v. Bitz*, 757 N.W.2d 565, 566-67 (N.D. 2008) (no question as to impairment, only question is whether drugs detected in urine caused impairment); *Delane v. State*, 369 S.W.3d 412, 430 (Tex. App. 2012) ("The term 'intoxicated' therefore has two components: (1) impairment (2) caused by alcohol or drugs."). This is especially true when the finder of fact is presented with evidence suggesting that an impairment could have been caused either by an intoxicating substance or by a medical condition. *State v. Stark*, 157 Idaho 29, 31, 333 P.3d 844, 846 (Ct. App. 2013).

At trial, the district court excluded the specific level of methamphetamine in Keefe's blood pursuant to I.R.E. 401 and 403 as to the DUI but relevant as to the trafficking and drug paraphernalia charges. However, the district court then addressed whether Officer Merz could testify about the therapeutic level as part of the DUI charge. The district court ruled, "So the only part that's going to be admissible is the fact that the test did show the presence of methamphetamine in the system above the therapeutic level, not what the number is, not how much above it, just that it's above the therapeutic level." Keefe objected and argued that Officer Merz was not qualified to interpret lab results and "with all the DRE and DUI, there's nothing in his disclosure saying he's qualified to make that statement." Keefe argued, "That's why in these *drug DUI* cases, we see someone . . . come in who is qualified in that." (Emphasis added.) Keefe further argued that because the district court had limited Officer Merz from testifying about the

methamphetamine as it related to the DUI charge, allowing Officer Merz to testify about the therapeutic level of methamphetamine as part of the DUI would be improper:

> [Y]ou've already ruled that he can't testify as a DRE to methamphetamine specifically that he believed--he can't testify that he believed Mr. Keefe was under the influence of a controlled substance. He can't testify that he smelled meth.
>
> The Court has limited him to testifying anything about drugs. And then being able to allow him to testify about an interpretation of a toxicology report without proper training and disclosure . . . is improper.

The State responded that it "didn't understand your Honor to be excluding Officer Merz from discussing his training and experience *regarding DUIs, including drug or controlled substance DUIs*. So he's going to be able to explain that in terms of laying foundation for his opinion that the defendant was impaired." (Emphasis added.) The district court replied, "Right. I didn't kick him out the DRE and drug stuff under [I.R.E.] 702. I kicked him out of [I.R.E.] 401 and 403." The district court went on: "So does the officer have the requisite training under [I.R.E.] 702? Yes. Can the officer say that? Yes." Thus, the issue was whether the amount of methamphetamine in Keefe's blood was relevant to the causation of Keefe's impaired driving. The district court held that Officer Merz could "be an expert for the purposes of telling us what the therapeutic--that the number in the report, whatever it is, is above the therapeutic level. Neither Shrum or Merz will say the numbers. Merely that[] it's higher than that."

This exchange demonstrates that the evidence excluded was the specific level of methamphetamine in Keefe's blood, not that the level exceeded the therapeutic level. Although Keefe was arguing Officer Merz's testimony regarding the therapeutic level was not admissible evidence regarding causation for the DUI, the district court rejected this argument and found the evidence that the amount of methamphetamine present in Keefe's blood was above the therapeutic level and was admissible evidence of causation.

Keefe argues the district court erred in considering the results of the blood draw when denying Keefe's I.C.R. 29 motion. However, because the district court held the evidence was admissible, it was not error for the district court to consider that evidence in denying Keefe's I.C.R. 29 motion. Furthermore, the district court considered other evidence and concluded that absent Keefe's blood test results, there was sufficient evidence for the case to go to the jury.

When the district court denied Keefe's I.C.R. 29 motion, the court considered the totality of the evidence presented at trial:

6

Here we have--even though the excluded evidence, we still have a statement by Celena Shrum that she was able to determine a number and the statement by Merz that he knows the therapeutic amount, and this was well above that amount is a sufficient basis for an inference by the jury.

Second, while I excluded Mr. Keefe's statements about drug use three, four, and five days before, or a week before--those were excluded--I didn't exclude the actual presence of drugs itself.[3]  And that is a basis for them to decide that is the intoxicating substance and that he was intoxicated on that substance.

And the torch was right there on the console.  That could be an inference that it was a recent use of that torch because it hadn't been put back where it would have been with the other paraphernalia.  That's another basis for them to make an inference that methamphetamine is the--that he's intoxicated on methamphetamine.

I also have the observations by Merz in conducting his tests with the eyelids and others.  He said it was inconsistent with alcohol.  It was consistent with something else.

And all that is sufficient for it to go to the jury.  Therefore, the motion is denied.

Keefe argues that because the district court excluded the evidence of his blood test as it related to the DUI, the remaining evidence was insufficient to prove Keefe's impairment was caused by methamphetamine at the time of his arrest.  Keefe further argues his case is indistinguishable from *Stark*.  The State responds that the more applicable case here is *State v. Guerra*, 169 Idaho 486, 497 P.3d 1106 (2021).

In *Stark*, an officer observed Stark make an illegal right-hand turn, briefly drive the wrong way on a one-way street, and then pull into a gas station parking lot.  *Stark*, 157 Idaho at 30, 333 P.3d at 845.  Stark had slurred speech, pinpoint pupils, difficulty keeping his head up and his eyes open, and nystagmus.  *Id.*  Stark was subsequently arrested for DUI.  *Id.*  Officers conducted a breath-alcohol test, but no alcohol was detected.  *Id.*  Stark then submitted to a blood draw; the toxicology report indicated the presence of "Carboxy-THC" in Stark's blood.  *Id.*  At trial, Stark

---

3       The district court held that the blood test results revealing the amount of methamphetamine in Keefe's blood were not relevant under Idaho Rule of Evidence 401 and the probative value was substantially outweighed by the danger of unfair prejudice under I.R.E. 403.  However, after a discussion about whether Officer Merz could testify as an expert that the amount of methamphetamine in Keefe's blood was above the therapeutic level as it related the DUI charge, the district court ruled that testimony was admissible.  The district court also instructed the jury in a written instruction and in response to a question during jury deliberation that they "may not use evidence about a blood sample in deciding whether Mr. Keefe is guilty of his Count II [DUI]."  To exclude the results of the blood test but then permit testimony that the results of the blood test were above the therapeutic level appears to be inconsistent.  However, that inconsistency is not challenged on appeal.

admitted he occasionally used marijuana but testified he was not under the influence of marijuana or other drugs when he was stopped by the officer. *Id*. Stark was convicted of DUI and appealed to the district court. *Id.* The district court affirmed, and Stark again appealed. On appeal to this Court, the State conceded that "the chemical substance of Carboxy-THC, as opposed to THC, is not a drug or intoxicating substance but is, instead, a metabolite of marijuana." *Id.* at 32, 333 P.3d 847. We held that while there was sufficient evidence presented that Stark was impaired, there was insufficient evidence to prove Stark's impairment was caused by drugs or intoxicating substances at the time of his arrest because "a blood test indicating the presence of Carboxy-THC shows nothing more than past marijuana use." *Id.* at 33, 333 P.3d at 848. The State presented "no testimony or other evidence that could explain the absence of THC in the toxicology report or to explain if, or how, the results of the toxicology report could be extrapolated back to show intoxication at a specific time." *Id.* This Court reversed the district court's order on intermediate appeal and vacated Stark's judgment of conviction. *Id.* at 34, 333 P.3d at 849.

Like in *Stark*, Keefe showed physical signs of impairment; his blood test was negative for alcohol; and he was charged with DUI. However, in *Stark*, this Court held that "the State presented no evidence suggesting that Stark's behavior was consistent with the symptoms of marijuana use." *Stark*, 157 Idaho at 33, 333 P.3d at 848. In Keefe's case, Officer Merz testified to several physical symptoms and behaviors that he recognized, as a DRE, to be symptoms of methamphetamine use including Keefe's retracted eyelids; eyelid tremors; rapid pulse; pulsating tongue; and his poor performance on the FSTs.

Further, in *Stark*, there was no evidence of drugs or paraphernalia found in Stark's possession at the time of his arrest. In contrast, Keefe was found with a butane torch in plain view on his center console, a pipe known to Officer Merz to be used to smoke methamphetamine, and over 140 grams of methamphetamine. Finally, in *Stark*, we emphasized that the testifying officer did not affirmatively opine that Stark was under the influence of drugs or intoxicating substances and held that "absent any testimony that constitutes an opinion, the officer's testimony is not evidence that Stark was under the influence of drugs or intoxicating substances." *Stark*, 157 Idaho at 34, 333 P.3d at 849. During Keefe's trial, Officer Merz testified that in his opinion, based on his training and experience, Keefe was impaired by a controlled substance for the purposes of operating a motor vehicle.

8

In *Guerra*, Guerra was stopped for driving with a cigarette in one hand and her cell phone in the other. *Id.* at 490, 497 P.3d at 1110. Guerra's eyes were watery, puffy, and bloodshot, and the officer had difficulty understanding her. *Id.* The officer, who was a DRE, suspected Guerra was under the influence of drugs. *Id.* Guerra was asked to perform FSTs, which she performed poorly, and submitted to a breath test, which came back negative for alcohol. *Id.* The officer transported Guerra to the police station for a drug recognition evaluation. *Id.* In Guerra's possession were several prescription medication bottles with warnings to take caution when operating motor vehicles. *Id.* After completing the evaluation, the officer concluded that Guerra was under the influence of a central nervous system depressant. *Id.* A blood draw was performed which tested positive for several drugs, including drugs that depress the central nervous system. *Id.* at 490-91, 497 P.3d at 1110-11. Guerra was charged with driving under the influence of drugs in violation of I.C. § 18-8004(1)(a). *Guerra*, 169 Idaho at 491, 497 P.3d at 1111.

Guerra was found guilty as charged and filed an I.C.R. 29(c)(1) motion for judgment of acquittal, which the magistrate court denied. *Id.* Guerra was convicted and appealed to the district court. *Id.* The district court affirmed the magistrate court and Guerra appealed again. *Id.* On appeal to the Idaho Supreme Court, Guerra argued that the State did not prove her impairment was caused by an intoxicating substance that affected her ability to drive. *Id.* at 492, 497 P.3d at 1112. The Court concluded that based on the totality of the evidence, a rational jury could have found the essential elements of DUI beyond a reasonable doubt. *Id.* at 493, 497 P.3d at 1113. The Court explained that, unlike in *Stark*, Guerra participated in a drug recognition evaluation after which the officer concluded Guerra was under the influence of central nervous system depressants. *Guerra*, 169 Idaho at 493, 497 P.3d at 1113. Furthermore, the State presented evidence to prove Guerra's impairment was caused by drugs when the State's toxicologist testified that Guerra's blood sample tested positive for several drugs that "can result in muscle weakness, dizziness, sleepiness, slurred speech, rigid movements, uncoordinated movements, and confusion." *Id.* Thus, the Court concluded, "unlike the facts in *Stark*, the State presented evidence to prove Guerra's impairment was caused by drugs." *Guerra*, 169 Idaho at 494, 497 P.3d at 1114.

In this case, like in *Guerra*, Keefe showed physical signs of impairment. Likewise, Officer Merz was a DRE. Although Officer Merz did not perform the twelve-step drug recognition evaluation that was performed in *Guerra*, Officer Merz testified that the twelve-step or what he described as a full drug recognition evaluation is not required and often not possible for various

9

reasons. Those reasons included circumstances such as the individual refusing to participate or the need to transport the individual to the hospital. We also note that in *Guerra* the positive blood test results were admissible, and a toxicologist tied the results to the physical symptoms of impairment shown by Guerra. *Id.* at 493-94, 497 P.3d 1113-14.

This case is more like *Guerra* than *Stark*. Given the evidence presented, a rational jury could have found the essential elements of DUI beyond a reasonable doubt. The jury heard Officer Merz's testimony that he observed Keefe slumped over in his vehicle with a butane torch in plain view on the center console, which Officer Merz recognized, based on his training and experience, as the type commonly used to smoke methamphetamine. When Officer Merz engaged Keefe in conversation, he observed that Keefe's eyes were watery and bloodshot; his eyelids were retracted and when asked to close his eyes, Keefe's eyelids displayed rapid tremors; and the same rapid tremors occurred when Keefe stuck his tongue out. Officer Merz testified that, based on his training and experience as a certified DRE, these were all objective symptoms of an individual potentially under the influence of a controlled substance.

Additionally, when Officer Merz took Keefe's pulse after having him rest against a patrol vehicle, Keefe's pulse was elevated at 136 beats per minute. During the horizontal gaze nystagmus test, Keefe was instructed to keep his head still, but he was unable to do so. Keefe did not display signs of nystagmus, which Officer Merz testified at trial made him suspect Keefe was not under the influence of alcohol:

| | |
|---|---|
| STATE: | So based upon your training and experience, did that give you any information as it relates to the defendant being under the influence of alcohol? |
| OFFICER MERZ: | Yes. |
| STATE: | And what did it tell you about that? |
| OFFICER MERZ: | It made me feel that he was not under the influence of alcohol and that there might be something else in his system. |
| STATE: | And why is that? |
| OFFICER MERZ: | Well, different drugs produce different reactions in your body. There's only certain types of drugs that will give you horizontal gaze nystagmus. Stimulations do not, and neither do narcotic analgesics like fentanyl. Stimulants would include methamphetamine, cocaine. You could also get them with some hallucinogens like Molly, MDMA, which is basically methamphetamine, but it's still one of them. That would not give you any horizontal gaze nystagmus.<br>Central nervous system depressants would, like a high dose of Xanax, so I didn't suspect any of those. |

10

STATE:           And alcohol, obviously?
OFFICER MERZ:   And alcohol which is a depressant.

Officer Merz also testified there was "an extremely pungent odor" similar to "decaying burnt flesh mixed with a chemical odor" emitting from Keefe's mouth during their encounter. During the walk-and-turn test, Officer Merz stated that Keefe displayed "four out of eight of the clues" of impairment. Keefe also performed a modified Romberg test, during which his eyelids and body displayed rapid tremors. About fifteen minutes into the stop, after completing the FSTs, Officer Merz took Keefe's pulse again, which remained elevated at 122 beats per minute. In addition to the physical indicators of impairment, the search of Keefe's vehicle revealed a pipe that Officer Merz recognized as commonly used to smoke methamphetamine and a safe that contained 147 grams of methamphetamine.

The evidence, including Officer Merz's testimony and the presence of methamphetamine and paraphernalia, was sufficient for the jury to conclude beyond a reasonable doubt that Keefe was guilty of DUI. Assuming for purposes of argument that the district court should not have considered the evidence that the level of methamphetamine in Keefe's blood exceeded the therapeutic level of methamphetamine, there was still substantial evidence, and reasonable inferences therefrom, upon which a reasonable trier of fact could have found that the State sustained its burden of proving both that Keefe was impaired and the cause of his impairment for purposes of DUI. For that reason, the district court did not err in denying Keefe's I.C.R. 29 motion for judgment of acquittal.

## IV.

## CONCLUSION

Keefe has failed to show the district court erred in denying his I.C.R. 29 motion for judgment of acquittal. Keefe's judgment of conviction is affirmed.

Chief Judge TRIBE and Judge LORELLO, **CONCUR**.